IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNATHAN MANUEL DEMERY<br>1212 Quincy Street, N.W.<br>Washington, D.C. 20011-5767 | :<br>:<br>:<br>: |
| TIJUANA DARLENE DEMERY<br>1212 Quincy Street, N.W.<br>Washington, D.C. 20011-5767 | :<br>:<br>:<br>: |
| WAYNE MABRY<br>1212 Quincy Street, N.W.<br>Washington, D.C. 20011-5767 | :<br>:<br>:<br>: |
|    Plaintiffs | :<br>: |
|   vs. | :   Civil No. _____<br>: |
| MONTGOMERY COUNTY,<br>MARYLAND<br>A Body Corporate and Politic<br>Executive Office Building<br>101 Monroe Street<br>Rockville, Maryland 20850 | :<br>:<br>:<br>:<br>:<br>:<br>: |
| KATHERINE FUMAGALLI<br>Police Officer, Badge No. 1074<br>Montgomery County Police Department<br>2350 Research Boulevard<br>Rockville, Maryland 20850 | :<br>:<br>:<br>:<br>: |
|    Defendants | : |

# COMPLAINT
(Allegations Common To All Counts)

  Plaintiffs Johnathan Manuel Demery, Pijuana Darlene Demery and Wayne Mabry, by counsel, allege:

  1. This is an action for money damages brought pursuant to 42 U.S.C.,

-1-

Sections 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution and the Maryland Constitution and laws. The action is against police detective Katherine Fumagalli and Montgomery County, Maryland.

2.      This complaint alleges that the constitutional and civil rights of Johnathan Manuel Demery were violated when he was wrongly arrested in the District of Columbia and accused of a crime that resulted in him being jailed for eight days – seven of which were in the District of Columbia. The complaint alleges that Katherine Fumagalli intentionally and/or recklessly misrepresented and omitted material facts from an affidavit in support of a warrant charging Johnathan with a crime and that her false, and that her misleading affidavit was used to procure a search warrant to search the plaintiffs' home; that she lacked probable cause to believe that Johnathan had committed a crime; and that but for a constitutionally inadequate investigation, she would not have charged the plaintiff with a crime. As a result, plaintiffs were deprived of rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, Article 26 of the Maryland Declaration of Rights and the laws of District of Columbia.

**Parties**

3.      Plaintiffs are residents of the District of Columbia and reside together at 1212 Quincy Street, N.W., Washington, D.C.

4.      Katherine Fumagalli was at all times relevant to this Complaint a duly appointed and acting police officer of the County, acting under color of law.

5.      The County is a body corporate and politic under Maryland law and was the employer of Katherine Fumagalli.

**Facts**

6.      On June 21, 2007, at 12:06 a.m., three men assaulted Mark Tobias as he

approached his car in a 7-11 parking lot located at 5411 River Road, Bethesda, Maryland. One man put Tobias in a headlock from behind and threw him to the ground. One of the other suspects punched Tobias in the ribs and took his car keys. The men fled in Tobias' Mazda automobile.

7. Patrol units of the County police department were dispatched. To the police Tobias described the suspect who put him in a headlock as follows: black male, 5'10" to 5'11" in height and weighing 200 lbs, wearing baggy dark knee length shorts, a dark hooded sweatshirt, and Addidas-brand tennis shoes. The police refer, and this complaint, will refer to him as Suspect #1. According to police reports, Tobias described the two other suspects as simply black males.

8. Katherine Fumagalli, a Montgomery County police detective, was assigned lead detective on the case. On the night of the crime, she learned that the 7-11 store had a video surveillance camera inside of the store. She procured a tape of the video which showed Suspect #1 in the 7-11 store. Fumagali obtained several still images of the suspect.

9. On June 22, 2007, a citizen reported a Mazda parked in an alley at 10th and Monroe Streets, N.W., in Washington, D.C. Montgomery County robbery detectives recovered the vehicle and determined that it was Tobias' stolen car.

10. On June 26, 2007, Fumagalli and Detective David Davis saw plaintiff Johnathan Manuel Demery standing with a group of his friends at the Raymond Recreation Center, which is located at 10th Street and Spring Road, N.W., in Washington, D.C. Johnathan was 16 years old at the time. The officers approached the group. They did not ask plaintiff any questions concerning the crime under investigation. However, they took a photograph of the plaintiff and

-3-

he willingly provided his full name, address, date of birth, social security number, and the name of the high school he attended.

11.     On June 27, 2007, Fumagalli applied to the District Court of Maryland for Montgomery County for an arrest warrant charging plaintiff Johnathan Demery with the felonious offense of carjacking Tobias's car.  In support of the issuance of the charging document, she wrote an affidavit.  She knew that her affidavit would be used as a basis for the issuance of a search warrant to search plaintiffs' home as well.  In her affidavit, Fumagalli alleged:

> On Tuesday, June 26, 2007, detectives from the Montgomery County Police, Robbery Section responded to the area of 10th and Monroe where the vehicle was recovered. Located nearby at the Raymond Rec Center was a group of males matching the above suspect [sic] description.  Specifically, one male in the group was observed to closely match the surveillance video image of suspect #1. Metropolitan Police was contacted and the group was Field Interviewed.  Demery was identified by his District of Columbia driver's license. Demery can be identified as the suspect in the surveillance images, was wearing tennis shoes identical to the ones in the surveillance images, and was located only a few blocks from the location where the stolen vehicle was recovered, and provided an address which was only one block from the rec center where he was identified. Demery's physical description matches that provided by the victim and when viewed, he matches the images on the surveillance tape.

13.     Several material allegations of the affidavit were false and misleading and Fumagalli either knew they were false and misleading or she acted with reckless disregard for the truth. She also deliberately omitted facts that would have eliminated probable cause to believe that Johnathan was suspect #1.

    a)      Johnathan wore Nike tennis shoes when Fumagali saw him on June 26, 2007. Any reasonably well trained police officer would know that Nike tennis shoes could not possibly be "identical" to the Adidas shoes worn by Suspect #1.  Nike tennis shoes bear a

distinctive trademark design, i.e., a "swoosh" emblem, that is readily distinguishable from the Adidas design, which is multiple diagonal stripes.

b)      Plaintiff is not "closely match" Suspect #1.  Any reasonably well trained police officer who looks at the surveillance image of Suspect #1 and compares it to Johnathan Demery can readily distinguish Suspect #1 from Johnathan.  Johnathan has a receding and rounded hairline that is noticeably different from the suspect's non-receding, box-type hairline.

c)      Fumagalli omitted to mention in the affidavit that the victim Tobias was not shown Johnathan's photograph and had not made any identification of Johnathan.  To assert that Johnathan "was observed to closely match Suspect #1" was highly misleading in light of this omission.  Significantly, when Fumagalli finally got around to showing Tobias a photographic spread with Johnathan's photograph in it,  Tobias did not identify him as the suspect.  This occurred on July 16, 2007, which was several days after Johnathan already had been locked up on the charge.

d)      The affidavit states that Suspect #1 and Johnathan both wore shorts and socks pulled up to their shins, the inference being Johnathan was wearing the same clothing as Suspect #1.  Any reasonably well-trained officer would recognize that it is not at all unique for youth to wear shorts and socks in the summer.  This allegation is utterly non-probative and misleading.

e)      The affidavit is also misleading because it states that Johnathan's presence at the Raymond Recreation is "nearby" to where Tobias' vehicle was recovered.  The affiant omitted to state that the recreation center is located in an urban area heavily populated by black youth who probably meet the general description of Suspect #1; it is also at least two city blocks away from where Tobias' car was found.  Any reasonably well trained police officer would

know that Johnathan's presence at the recreation center had no probative value to link him to Tobias' car or the commission of the crime.

14.  Fumagalli utterly lacked probable cause to believe that Johnathan Demery had committed the crime.  In addition to the inaccurate factual allegations and non-probative facts cited in the affidavit, Fumagalli made no effort to interview plaintiff or his parents before she charged him.  She failed to assess Johnathan's police-recorded interview on June 27, 2008.  At that time, plaintiff not only steadfastly maintained his innocense, but he pointed out that his Nike shoes could not possibly be identical to the suspect's Adidas shoes and the reasons that he did not match the suspect.  He also was at home at the time of the alleged offense and his parents, a sibling could attest to his whereabouts when the crime was committed.  The interview was audio-recorded and was available to Fumagalli.  Fumagalli ignored Johnathan's claim of innocense while he sat in jail for the next eight days.

15.  On June 27, 2007, based upon a search warrant that was founded solely on Fumagalli's false affidavit, officers searched plaintiffs' home in the District of Columbia.  The police found no evidence to support the charges against him.  The officers seized three cell phones which belonged to plaintiffs.

16.  After his arrest and questioning, plaintiff Johnathan Demery was transported to a jail in the District of Columbia and held in custody.  On July 3, 2007, Fumagalli transported plaintiff from the District to Montgomery County to be processed on the charges.  She questioned plaintiff in the presence of Detective Deborah Haba.  Again, Johnathan continued to maintain his innocence and answered all questions.

17.  On July 3, 2007, at 8:23 p.m., plaintiff was presented to a Commissioner and bond

was set at $15,000. On July 4, 2007, at 6:00 p.m., plaintiffs Pijuana Demery and Wayne Demery paid a bondsman $1,500 and secured Johnathan's release on bail that day.

18. On July 27, 2007, the State's Attorney for Montgomery County nol prossed the charges against plaintiff Johnathan Demery.

19. Fumagali committed all actions while acting within the scope of her employment for the County.

20. As a direct and proximate result of acts of the defendant Katherine Fumagalli, Jonathan Demery suffered the following injuries and damages:

    a. Violation of his constitutional rights under the Fourth Amendment to the United States Constitution to be free from an unreasonable seizure of his person.

    b. Mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation.

    c. Economic loss in the form of the expense of bond, wages lost from a part-time job he intended to start, and time lost from normal pursuits and activities, etc.

    d. Injury to his reputation and impairment to his career, employment and educational prospects as a result of the existence of a records of arrest and criminal charges placed against him.

21. In addition, all plaintiffs both suffered a violation of their right against unreasonable searches when their home was searched on June 27, 2007.

22. The actions of Katherine Fumagali violated the following clearly established and well-settled federal constitutional rights of the Johnathan Demery, Pijuana Demery and Wayne Mabry:

   a. Freedom from unreasonable seizure of one's person;

   b. Freedom from arrest and prosecution except on probable cause to believe that a person has committed a crime;

   c. Freedom from unreasonable search of the home.

### Count 1 – 42 U.S.C. Section 1983 - Unlawful Arrest and Detention

23. Plaintiff Johnathan Demery suffered injury and damage by reason of his arrest on June 27, 2007 and detention until July 4, 2007, which amounted to an unreasonable seizure of his person in violation of the Fourth Amendment to the United States Constitution. The defendant Fumalgalli caused the arrest and detention of Johnathan Demery by reason of the fact that she intentionally or recklessly made misrepresentations of material fact in the application for charging document and in so doing directly caused the issuance of an arrest warrant and charging document against the plaintiff's minor child, which resulted in his arrest and detention. She also lacked probable cause to charge Johnathan or have him arrested and she failed to conduct a minimally adequate investigation of the crime.

### Count 2 – 42 U.S.C. Section 1983 – Malicious Prosecution

24. The defendant Fumagalli brought false criminal charges of carjacking against the Plaintiff's minor child. The charges were not based on probable cause and Fumagalli initiated and maintained the charges by intentional or reckless misrepresentations of material fact in the application for statement of charges and by failing to conduct a minimally adequate investigation of the facts. The charges were terminated in the plaintiff's favor.

### Count 3 - 42 U.S.C. § 1983 – Unconstitutional Search and Seizure

25. As a result of Fumagalli's actions in causing a search warrant for plaintiffs' home, police officers searched plaintiffs' home. The officers entered the home and searched every area of the house. The police took photographs of the house and seized items of personal property.

26. Fumagali, using the same false affidavit, also obtained a search warrant of plaintiffs' cell phones and searched the information recorded on the phone as well as all calls made.

27. As a result, plaintiffs suffered inconvenience, embarrassment, humiliation, time lost from their normal activities, and other losses.

### Count 4 – Malicious Prosecution

28. The defendant Fumagali brought false criminal charges of car-jacking against the Plaintiff's minor child. The charges were not based on probable cause and the officer had not conducted a minimally adequate investigation to link him to the crime. The charges were terminated in his favor.

29. Plaintiff and her minor son suffered harm as a result of the false charges. They incurred the expense of a bondsman, lost time from normal activities, were embarrassed and humiliated. Further, the charges created a permanent record with law enforcement, including the Federal Bureau of Investigation, which cannot be erased and which will result in curtailment of employment and career opportunities for the plaintiff's minor son.

### Count 5- False Arrest/False Imprisonment

30. In wrongfully seeking an arrest warrant against plaintiff's minor son, Fumagalli directly caused Johnathan Demery to be arrested and detained in restraint of liberty without legal justification. Based upon damages to the minor son as result of his arrest and detention for eight days, Fumagali and Montgomery County are liable in damages.

**Count 6 – Maryland Constitutional Violation**

31.     Defendant Fumagalli committed violations of the Maryland Constitution, namely Articles 24 and 26, by subjecting plaintiff's minor child to an unreasonable seizure of his person, without probable cause, by formally instituting false criminal charges against him, and by causing the issuance of a search warrant for the search of the plaintiff's home.

**Count 7 – Negligence – District of Columbia Common Law**

32.     Defendant Fumagali had a duty to exercise appropriate care before charging the plaintiff with felonious carjacking and seeking a search warrant to search plaintiffs' home.  She failed to conduct a minimally adequate police investigation and she negligently made false statements and omissions of fact from the warrant affidavit.

33.     As a consequence, plaintiff Johnathan Demery was arrested and charged with a felony, he spent eight days in jail, and he faced false criminal charges in court and he and the plaintiff sustained damages as previously alleged.  Further, Pijuana Darlene Demery sustained damage in the form of money spent for bail.

**Ad Damnun Clauses**

Under Counts 1-2 and 4-7, plaintiff Johnathan Demery demands judgment against defendant Katherine Fumagalli in the amount of $1,000,000.00 in compensatory damages and under counts 1-6, punitive damages in the amount of $250,000.00.  Under Count 4-7, the plaintiff Johnthan Demery demands judgment against the County in the amount of $1,000,000.00.     Under Count 3, plaintiffs Pijuana Darelene Demery and Johnathan Demery demand judgment for unconstitutional search of their home in the amount of $25,0000 in compensatory damages.

Plaintiff also seeks his attorney's fees and costs under 42 U.S.C. Sec. 1988.

                    _____/s/_____
                    Terrell N. Roberts, III
                    #965-061
                    Attorney for Plaintiff
                    6801 Kenilworth Avenue, Suite 202
                    Riverdale, Maryland 20737
                    (301) 699-0764

## DEMAND FOR TRIAL BY JURY

Plaintiff, through counsel, hereby demands a trial by jury.

                    _____/s/_____
                    Terrell N. Roberts, III
                    Attorney for Plaintiff

CIVIL COVER SHEET
JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Johnathan Manuel Demery
Tijuana Darlene Demery
Wayne Mabry

//o o/

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   District of Columbia
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Terrell N. Roberts, III.
Roberts & Wood Law Office
6801 Kenilworth Avenue
Suite 202
Riverdale, Maryland 20737
301-699-0764

## DEFENDANTS

Montgomery County, Maryland
Katherine Fumagalli

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Montgomery
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Case: 1:08-cv-01304
Assigned To : Roberts, Richard W.
Assign. Date : 7/29/2008
Description: Civil Rights-Non-Employ.

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
⊗ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

410 Antitrust

○ **B. Personal Injury/ Malpractice**

310 Airplane
315 Airplane Product Liability
320 Assault, Libel & Slander
330 Federal Employers Liability
340 Marine
345 Marine Product Liability
350 Motor Vehicle
355 Motor Vehicle Product Liability
360 Other Personal Injury
362 Medical Malpractice
365 Product Liability
368 Asbestos Product Liability

○ **C. Administrative Agency Review**

151 Medicare Act

Social Security:
861 HIA ((1395ff)
862 Black Lung (923)
863 DIWC/DIWW (405(g)
864 SSID Title XVI
865 RSI (405(g)
Other Statutes
891 Agricultural Acts
892 Economic Stabilization Act
893 Environmental Matters
894 Energy Allocation Act
890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**     OR     ○ **F. Pro Se General Civil**

Real Property
210 Land Condemnation
220 Foreclosure
230 Rent, Lease & Ejectment
240 Torts to Land
245 Tort Product Liability
290 All Other Real Property

Personal Property
370 Other Fraud
371 Truth in Lending
380 Other Personal Property Damage
385 Property Damage Product Liability

Bankruptcy
422 Appeal 28 USC 158
423 Withdrawal 28 USC 157

Prisoner Petitions
535 Death Penalty
540 Mandamus & Other
550 Civil Rights
555 Prison Condition

Property Rights
820 Copyrights
830 Patent
840 Trademark

Federal Tax Suits
870 Taxes (US plaintiff or defendant
871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
610 Agriculture
620 Other Food &Drug
625 Drug Related Seizure of Property 21 USC 881
630 Liquor Laws
640 RR & Truck
650 Airline Regs
660 Occupational Safety/Health
690 Other

Other Statutes
400 State Reapportionment
430 Banks & Banking
450 Commerce/ICC Rates/etc.
460 Deportation

470 Racketeer Influenced & Corrupt Organizations
480 Consumer Credit
490 Cable/Satellite TV
810 Selective Service
850 Securities/Commodities/ Exchange
875 Customer Challenge 12 USC 3410
900 Appeal of fee determination under equal access to Justice
950 Constitutionality of State Statutes
890 Other Statutory Actions (if not administrative agency review or Privacy Act

②

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| 530 Habeas Corpus-General 510 Motion/Vacate Sentence | 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | 895 Freedom of Information Act 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ⊗ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| 710 Fair Labor Standards Act 720 Labor/Mgmt. Relations 730 Labor/Mgmt. Reporting & Disclosure Act 740 Labor Railway Act 790 Other Labor Litigation 791 Empl. Ret. Inc. Security Act | 441 Voting (if not Voting Rights Act) 443 Housing/Accommodations 444 Welfare ⊗ 440 Other Civil Rights 445 American w/Disabilities-Employment 446 Americans w/Disabilities-Other | 110 Insurance 120 Marine 130 Miller Act 140 Negotiable Instrument 150 Recovery of Overpayment & Enforcement of Judgment 153 Recovery of Overpayment of Veteran's Benefits 160 Stockholder's Suits 190 Other Contracts 195 Contract Product Liability 196 Franchise | 441 Civil Rights-Voting (if Voting Rights Act) |

V. ORIGIN
- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 U.S.C. Sect. 1983

VII. REQUESTED IN COMPLAINT    CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ 1,000,000.    Check YES only if demanded in complaint
JURY DEMAND:    YES ⊗    NO

VIII. RELATED CASE(S) IF ANY    (See instruction)    YES    NO ⊗    If yes, please complete related case form.

DATE 7-14-08 / 7-29    SIGNATURE OF ATTORNEY OF RECORD [signature]

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.