UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
——————————————————————————  )
                            )
JOHNATHAN MANUEL DEMERY,     )
et al.,                     )
         Plaintiffs,        )
                            )
         v.                 )    Civil Action No. 08-1304 (RWR)
                            )
MONTGOMERY COUNTY, MARYLAND, )
et al.,                     )
                            )
         Defendants.        )
——————————————————————————  )
```

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Jonathan Demery, Tijuana[1] Demery, and Wayne Mabry bring this action against Detective Katherine Fumagalli and Montgomery County, Maryland, alleging federal and state constitutional violations and several common law torts arising out of Johnathan Demery's arrest and confinement.  The defendants have moved to dismiss certain counts for failure to state a claim, or to transfer this case to the United States District Court for the District of Maryland.  Because the defendants have not shown that transfer is proper, their motion to transfer will be denied.  Because the plaintiffs have adequately pled causes of action for a federal constitutional violation, and governmental immunity does not bar plaintiffs' claims of false arrest and negligence, but plaintiffs have conceded dismissal of the claim

---

[1] Plaintiff's name is spelled "Tijuana" in the caption of the complaint, but spelled "Pijuana" in the body of the complaint.

-2-

under Article 24 of the Maryland Constitution and Montgomery County is immune from the plaintiffs' claim of malicious prosecution under Maryland law, the defendants' motion for partial dismissal will be granted in part and denied in part.

BACKGROUND

On June 21, 2007, three men assaulted Mark Tobias in Bethesda, Maryland, and stole his car. (Compl. ¶ 6.) Tobias described one of the three men who assaulted him as being 5'10" to 5'11" in height, black, weighing 200 pounds, and wearing dark knee-length shorts, a dark hooded sweatshirt and Adidas brand tennis shoes. (Compl. ¶ 7.) Fumagalli, a Montgomery County police detective, was assigned to be the lead detective on the case. On June 22, 2007, Montgomery County detectives recovered Tobias' car parked in an alley located at 10th and Monroe Streets N.W., in Washington D.C. (Compl. ¶¶ 8-9.) On June 26, 2007, Fumagalli and Detective David Davis saw Johnathan Demery ("Johnathan") standing near the intersection of 10th Street and Spring Road N.W. The detectives photographed Johnathan, and asked him for his name, address, date of birth, social security number, and the name of the high school he attended. Johnathan provided the officers with the information they requested. (Compl. ¶¶ 10-11.)

On June 27, 2007, Detective Fumagalli applied to the Montgomery County District Court for an arrest warrant charging

-3-

Johnathan with the felony of carjacking.  In the affidavit

supporting the application, Fumagalli alleged that:

> On Tuesday June 26, 2007, detectives from the
> Montgomery County Police, Robbery Section responded to
> the area of 10th and Monroe where the vehicle was
> recovered.  Located nearby at the Raymond Rec Center
> was a group of males matching the above suspect [sic]
> description.  Specifically, one male in the group was
> observed to closely match the surveillance video image
> of suspect #1.  Metropolitan Police was [sic] contacted
> and the group was Field Interviewed.  [Johnathan]
> Demery was identified by his District of Columbia
> driver's license.  Demery can be identified as the
> suspect in the surveillance images, was wearing tennis
> shoes identical to the ones in the surveillance images,
> and was located only a few blocks from the location
> where the stolen vehicle was recovered, and provided an
> address which was only one block from the rec center
> where he was identified.  Demery's physical description
> matches that provided by the victim and when viewed, he
> matches the images on the surveillance tape.

(Compl. ¶ 11.)  Johnathan was arrested and questioned in a

recorded interview on June 27, 2007, and said he was at home with

his parents and siblings at the time of the carjacking.  He was

held at a jail in the District of Columbia until July 3, 2007,

when Fumagalli transported him to Montgomery County, Maryland.

She questioned him and he again maintained his innocence.  On

July 4, 2007, Johnathan was released on a bond for which Tijuana

Demery and Wayne Demery paid a bondsman $1,500.  (Compl. ¶¶ 15-

18.)  On July 27, 2007, the county prosecutor declined to

prosecute Johnathan for the carjacking.  (Compl. ¶ 18.)

The plaintiffs allege that several of Fumagalli's assertions

in her affidavit were knowingly false and misleading or

-4-

demonstrated a reckless disregard for the truth, that Fumagalli lacked probable cause to believe that Johnathan participated in the carjacking and assault of Tobias, and that she failed to determine before and after his arrest whether Johnathan had a legitimate alibi.  (Compl. ¶¶ 13-14.)  The complaint alleges seven counts against the defendants: unlawful arrest and detention in violation of the Fourth Amendment under 42 U.S.C. § 1983 (Count 1); malicious prosecution under 42 U.S.C. § 1983 (Count 2); unconstitutional search and seizure of the plaintiffs' home and cell phones in violation of the Fourth Amendment under 42 U.S.C. § 1983 (Count 3); common law malicious prosecution (Count 4); common law false arrest and imprisonment (Count 5); unreasonable arrest and search in violation of Articles 24 and 26 of Maryland's Constitution (Count 6); and negligence under the common law of the District of Columbia (Count 7).  (Compl. ¶¶ 23-33.)

The defendants move to transfer this case to the United States District Court for the District of Maryland.  (See Defs.' Mot. to Change Venue.)  Alternatively, the defendants move to dismiss Count 2 of the complaint, Counts 4, 5, and 7 against Montgomery County, and all claims in Count 6 that arise under

-5-

Article 24 of the Maryland Constitution.[2]  (See Defs.' Mot. for
Partial Dismissal at 1-2.)

DISCUSSION

I.  TRANSFER

A case may be transferred to another venue under 28 U.S.C.
§ 1404(a) "[f]or the convenience of parties and witnesses, in the
interest of justice[.]"  28 U.S.C. § 1404(a).  See also Piper
Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981).  The moving
party carries the burden of demonstrating that a transfer is
warranted.  Montgomery v. SGT Int'l, Inc., 532 F. Supp. 2d 29, 32
(D.D.C. 2008); Onyeneho v. Allstate Ins. Co., 466 F. Supp. 2d 1,
3 (D.D.C. 2006).  Because "it is perhaps impossible to develop
any fixed general rules on when cases should be transferred[,]
. . . the proper technique to be employed is a factually
analytical, case-by-case determination of convenience and
fairness."  SEC v. Savoy Indus. Inc., 587 F.2d 1149, 1154 (D.C.
Cir. 1978) (quoting Starnes v. McGuire, 512 F.2d 918, 925
(1974)).

"Any transfer under § 1404(a) is restricted to a venue where
the action 'might have been brought.'"  See 28 U.S.C. § 1404(a);
Robinson v. Eli Lilly Co., 535 F. Supp. 2d 49, 51 (D.D.C. 2008).

_____

[2] Plaintiffs concede that they have not pled a cause of
action under Article 24 of the Maryland Constitution.  Therefore,
the defendants' motion to dismiss this portion of the claim will
be granted.

-6-

When, as here, jurisdiction is not based solely on diversity of citizenship,

> [a] civil action . . . may, except as otherwise
> provided by law, be brought only in (1) a judicial
> district where any defendant resides, if all defendants
> reside in the same State, (2) a judicial district in
> which a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial
> part of property that is the subject of the action is
> situated, or (3) a judicial district in which any
> defendant may be found, if there is no district in
> which the action may otherwise be brought.

28 U.S.C. § 1391(b).  Here, Montgomery County is a chartered county of the State of Maryland and Fumagalli resides in Maryland.  (See Defs.' Mem. in Supp. of Defs.' Mot. to Change Venue at 4.)  Therefore, this action could have been brought in the potential transferee district.

After determining that venue in the proposed transferee district would be proper, a court then "must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to [the] private concerns [of the parties], come under the heading of 'the interest of justice.'"  Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988).  The private interest factors that are typically considered include 1) the plaintiff's choice of forum, 2) the defendant's choice of forum, 3) where the claim arose, 4) the convenience of the parties, 5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts,

and 6) the ease of access to sources of proof.  Montgomery, 532
F. Supp. 2d at 32-33.  Public interest factors include 1) the
local interest in making local decisions about local
controversies, 2) the potential transferee court's familiarity
with the applicable law, and 3) the congestion of the transferee
court compared to that of the transferor court.  Akiachak Native
Community v. Dep't of the Interior, 502 F. Supp. 2d 64, 67
(D.D.C. 2007).  When a court balances private and public
interests, a "plaintiff's choice of forum is ordinarily accorded
deference."  Aftab v. Gonzalez, Civil Action No. 07-2080 (RWR),
2009 WL 368660, at *3 (D.D.C. February 17, 2009); see also
DeLoach v. Phillip Morris Cos., 132 F. Supp. 2d 22, 24 (D.D.C.
2000).  When two potentially proper venues are involved, the
plaintiffs' choice of forum is often accorded substantial
deference, particularly where the plaintiffs have chosen their
home forum and many of the relevant events occurred there.  Great
Socialist People's Libyan Arab Jamahiriya v. Miski, 496 F. Supp.
2d 137, 144-145 (D.D.C. 2007) (citing Reiffin v. Microsoft Corp.,
104 F. Supp. 2d 48, 52 (D.D.C. 2000) (internal citations
omitted)); cf. Hunter v. Johanns, 517 F. Supp. 2d 340, 344
(D.D.C. 2007) (noting that "the strong presumption against
disturbing plaintiff['s] initial forum choice . . . is weakened
. . . when the forum is not plaintiff's home forum and most of
the relevant events occurred elsewhere") (internal quotations and

-8-

citations omitted).  Ultimately, if the balance of private and public interests favors a transfer of venue, then a court may order a transfer.

A.   Private interests

The plaintiffs reside in this forum and have chosen to file their action here.  The defendants have presented no reason to disturb the substantial deference due to the plaintiffs' choice of their home forum.  While the defendants argue that the conduct that gave rise to the action was Fumagalli swearing out a warrant in Maryland to lead to a prosecution in Maryland,[3] the gravamen of the complaint's allegations is the actual Fourth Amendment deprivations which occurred in this district.  The search of the plaintiffs' house and Johnathan's arrest and detention took place in the District of Columbia based upon investigation conducted by Fumagalli in the District of Columbia.  Had Fumagalli stopped at swearing out the warrant affidavit and not caused the arrest and search warrants to be executed, this lawsuit would have been unlikely.  And although both of the defendants reside in Maryland

_____

[3] The defendants' reliance on Clark v. Harp, 737 F. Supp. 676 (D.D.C. 1990) is misplaced.  In Clark, the court determined that venue was improper in the District of Columbia because the plaintiff's claim did not arise in the District.  Here, however, the plaintiffs have alleged that a substantial part of the events giving rise to the claim occurred in the District of Columbia, such as Johnathan's arrest, his initial confinement in jail, and the searches and seizure of the plaintiffs' dwelling.  Unlike Clark, this case is not one where one venue is improper and the other is proper; venue is proper in the District of Columbia.

and the evidence of the carjacking is in Maryland, the close proximity of the district courts in Maryland and the District of Columbia hardly poses any obstacle to the parties' appearance here, the defendants' ability to present witnesses, or their access to sources of proof.  See Modaressi v. Vedadi, 441 F. Supp. 2d 51, 57 (D.D.C. 2006) ("the geographic distance between this Court and . . . the District of Maryland is far too small to present anything more than minor practical difficulties for the parties or their witnesses.")  The plaintiffs point out that all of the witnesses to this action are within the 100-mile geographical area to which subpoena power extends.  The balance of private interests favors this district.

      B.   Public interests

     The facts here may strain the notion that there are two disparate localities with disparate interests in making decisions about this controversy, since the events occurred in contiguous local jurisdictions which enjoy seamless and constant cross-border interactions.  It may be true that the conduct of a Maryland detective investigating a Maryland carjacking may carry greater interest in Maryland, but her triggering an arrest and detention in this district of a resident of this district and a search of plaintiffs' home here would carry no less interest here.  Some claims will be governed by Maryland law, while others will be governed by D.C. law.  The rest will be governed by

-10-

federal law, with which both districts' federal courts are
presumed to be equally familiar.  Al-Ahmed v. Chertoff, 564 F.
Supp. 2d 16, 20 (D.D.C. 2008) (stating that both federal courts
are "equally familiar" with federal law).  The defendants did not
present evidence regarding the relative congestion of the
different courts.  The balance of public interests does not tilt
in favor of transfer.

The defendants have not carried their burden of
demonstrating that the public and private interests favor
transfer.  At most, the defendants have shown why they believe
that the District of Maryland is a slightly more convenient forum
for them, a showing that is insufficient to nullify the deference
due to the plaintiffs' choice of forum.  See Miski, 496 F. Supp.
2d at 145.  The defendants' motion to transfer venue will be
denied.

II.  MOTION FOR PARTIAL DISMISSAL

The defendants move under Fed. R. Civ. P. 12(b)(6) to
dismiss Count 2 of plaintiffs' complaint, as well as claims
against Montgomery County in Counts 4, 5, and 7.  Rule 12(b)(6)
authorizes dismissal of a complaint when a plaintiff fails to
state a claim upon which relief can be granted.  See Fed. R. Civ.
P. 12(b)(6).  In order to survive a motion to dismiss under Rule
12(b)(6), the allegations stated in the contested portion of the
plaintiff's complaint "must be enough to raise a right to relief

above the speculative level[.]" <u>Bell Atl. Corp. v. Twombly</u>, 550
U.S. 544, 555 (2007).  The complaint must be construed in the
light most favorable to the plaintiff and "the court must assume
the truth of all well-pleaded allegations." <u>Warren v. District
of Columbia</u>, 353 F.3d 36, 39 (D.C. Cir. 2004).  If a plaintiff
fails to allege sufficient facts to support a claim, that claim
must be dismissed. <u>See</u> <u>Twombly</u>, 550 U.S. at 555-556.

A.   <u>Count 2: malicious prosecution under 42 U.S.C. § 1983</u>

The defendants argue that Count 2 should be dismissed
because there is no "independent" cause of action for malicious
prosecution under 42 U.S.C. § 1983.  To state a proper claim
under § 1983, a plaintiff must allege (1) that the defendant was
acting under color of state law when the defendant committed the
actions the plaintiff complains of, and (2) that the defendant
deprived the plaintiff of a right, privilege, or immunity
protected by the Constitution or laws of the United States. <u>See
LaRouche v. Fowler</u>, 152 F.3d 974, 988 (D.C. Cir. 1998); <u>Ennis v.
Lott</u>, 589 F. Supp. 2d 33, 37 (D.D.C. 2008); <u>Johnson v. Lewis</u>,
Civil Action No. 06-22 (RWR), 2006 WL 2687017, at *3 (D.D.C.
September 19, 2006).  According to the defendants, there is no
federal right to be free from malicious prosecution, so
plaintiffs fail to allege the second element of the two elements
necessary to state a claim under § 1983.  However, contrary to
the defendants' assertion, the D.C. Circuit recently "join[ed]

the large majority of circuits in holding that malicious
prosecution is actionable under 42 U.S.C. § 1983 to the extent
that the defendant's actions cause the plaintiff to be
unreasonably 'seized' without probable cause, in violation of the
Fourth Amendment." Pitt v. Dist. of Columbia, 491 F.3d 494, 510
(D.C. Cir. 2007). Here, plaintiffs allege that the defendants'
malicious prosecution of Johnathan led to the unreasonable
seizure of his person (see Compl. ¶ 20), thereby alleging a
cognizable claim under Pitt. The defendants' motion to dismiss
Count 2 will be denied.[4]

    B.   Counts 4, 5, and 7: state tort claims

    The defendants move to dismiss plaintiffs' state law claims
of false arrest and imprisonment, malicious prosecution, and
negligence brought against Montgomery County in Counts 4, 5,
and 7 based upon the argument that Montgomery County would be
entitled to governmental immunity from these claims under

---

    [4] In their reply brief, the defendants also argue that Count
2 should be dismissed because it is "duplicative" of Count 1 of
the complaint. Because this argument was raised for the first
time in their reply brief, it will not be considered. See
Presbyterian Med. Ctr. of the Univ. of Pa. Health Sys. v.
Shalala, 170 F.3d 1146, 1152 (D.C. Cir. 1999) (stating that a
court need not consider an argument first raised in a reply
brief); D.L. v. District of Columbia, 450 F. Supp. 2d 11, 20 n.6
(D.D.C. 2006) ("Defendants should have included this argument in
their motion to dismiss, rather than waiting to raise it in their
Reply.").

-13-

Maryland law.  Plaintiffs oppose and argue that District of Columbia law would apply and would not afford immunity.[5]

Both parties agree that the District of Columbia's choice of law rules will apply.  See Robinson, 535 F. Supp. at 53; Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 857 (D.C. Cir. 2006) (applying District of Columbia choice of law rules to plaintiff's claims because "[w]hen deciding state-law claims under . . . supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit") (internal citations omitted).  The District of Columbia's highest court has explained that

> [i]n determining which jurisdiction's law to apply in a tort case, we use the "governmental interests" analysis, under which we evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review.  [In order to determine which government's interest is strongest] we also consider the four factors enumerated in the Restatement (Second) of Conflict of Laws § 145 [1971]: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and

---

[5] The defendants appear to concede that under District of Columbia law, Montgomery County would not be entitled to dismissal based upon governmental immunity.  (See Defs.' Mem. in Supp. of Mot. for Partial Dismissal at 8 n.3.)  In addition, plaintiffs concede that Montgomery County would be entitled to dismissal of the state common law tort claims under Maryland law. (See Pls.' Mem. in Supp. of Pls.' Opp'n to Mot. for Partial Dismissal at 7.)  A court may base its analysis upon such concessions by parties.  Jacobsen v. Oliver, 555 F. Supp. 2d 72, 77 (D.D.C. 2007), citing CSX Transp., Inc. v. Commercial Union Ins. Co., 82 F.3d 478, 482-83 (D.C. Cir. 1996).

-14-

    place of business of the parties; and (d) the place
where the relationship is centered. . . .  When both
jurisdictions have an interest in applying their own
laws to the facts of the case, the forum law will be
applied unless the foreign jurisdiction has a greater
interest in the controversy.

Drs. Groover, Christie & Merritt v. Burke, 917 A.2d 1110, 1117

(D.C. 2007) (quotation marks and brackets in the original;

citations omitted).  Under the District of Columbia's choice of

law rules, courts are allowed to apply the law of one

jurisdiction to one claim in a case while determining that the

law of another jurisdiction should control another claim in the

same case, a practice known as dépeçage.  See Hercules & Co. v.

Shama Restaurant, 566 A.2d 31, 40 (D.C. 1989); Stutsman v. Kaiser

Found. Health Plan, 546 A.2d 367, 373 (D.C. 1988).

       1.   False arrest and negligence claims

    The defendants fail to meet their burden to show that

Maryland's interests exceed the interests of the District of

Columbia regarding the false arrest and imprisonment and

negligence claims.  The locations of the injuries, the location

of the conduct causing the injuries, the parties' domiciles, and

the center of the relationship between the parties lie no better

for defendants than equally in both jurisdictions.  Regarding the

false arrest and imprisonment claim, Johnathan was arrested in

the District of Columbia and spent six days in jail in the

District of Columbia, while he spent only one day detained in

Maryland after a bail hearing there.  These facts reflect no

greater injury in Maryland.  While Fumagalli prepared the allegedly faulty affidavit and secured the arrest warrant in Maryland, the chain of events causing the injury of arrest and imprisonment began with the allegedly negligent investigation in this district that produced the affidavit's contents.  With the locus of the parties' domiciles and relationships split between the District of Columbia and Maryland, these factors in the aggregate present no greater governmental interest in Maryland applying its laws to the arrest and detention in the District of Columbia of a domiciliary here.  Similarly, plaintiffs' negligence claim pertains to Fumagalli's purported failure to exercise appropriate care and diligence with exculpatory leads before charging the defendant with felonious carjacking and causing his arrest and detention and a search of plaintiffs' home.  While some aspects of the investigation occurred in Maryland, some also occurred in the District of Columbia.  Much of the injury occurred in this district, while some occurred in Maryland.  The defendants simply have not demonstrated that Maryland has a greater interest in applying its laws to the plaintiffs' negligence claim.  The defendants' motion to dismiss Counts 5 and 7 against Montgomery County will be denied.

  2. Malicious prosecution

  The defendants have met their burden to show that Maryland law would apply to the plaintiffs' claim of malicious prosecution

in Count 4.  The genesis of the claim of malicious prosecution
was Fumagalli's swearing to a purported false affidavit about
Johnathan, conduct that occurred in Maryland by an employee of a
Maryland jurisdiction's police department which led to a
prosecution that was initiated and centered in Maryland.
Maryland law would apply to this claim, and Montgomery County
will be afforded immunity from suit on the plaintiffs' claim of
malicious prosecution under Maryland law.  Defendants' motion to
dismiss Count 4 against Montgomery County will be granted.

<u>CONCLUSION AND ORDER</u>

The defendants have not shown that transfer is proper, the
plaintiffs have adequately pleaded causes of action for malicious
prosecution under 42 U.S.C. § 1983 and Montgomery County is not
immune from the plaintiffs' state law claims of false arrest and
negligence.  The plaintiffs have conceded that they have not pled
a cognizable claim under Article 24 of the Maryland Constitution,
and Montgomery County is immune from the plaintiffs' state law
claim of malicious prosecution.  Accordingly, it is hereby

ORDERED that defendant's motion [4] to change venue be, and
hereby is, DENIED.  It is further

ORDERED that defendant's motion [5] for partial dismissal
be, and hereby is, GRANTED in part and DENIED in part.
Plaintiffs' claim under Article 24 of the Maryland Constitution

-17-

in Count 6 and plaintiffs' claim of malicious prosecution against

Montgomery County in Count 4 are DISMISSED.   The motion is

otherwise denied.

SIGNED this 18th day of March, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge